**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **DARREN LAMONT WILLIAMS,** | ) |
| **Individually, and on behalf of himself** | ) |
| **and others similarly situated,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **Case No. 3:23-cv-00900** |
| | )  **Judge Aleta A. Trauger** |
| **CINCINNATI LUBES, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM</u>

Before the court is plaintiff Darren Lamont Williams' Motion to Facilitate Notice of [a Fair Labor Standards Act ("FLSA")] Collective Action under 29 U.S.C. § 216(b) ("Motion for Notice"), filed along with a supporting Memorandum of Law and the plaintiff's Declaration.[1] (Doc. Nos. 19, 19-1, 20.) Defendant Cincinnati Lubes, Inc. ("CLI") has filed a Response in Opposition to the Motion for Notice, supported by the Declarations of Michael D. Davis, the Vice President and Chief Financial Officer ("CFO") of Lucor, Inc., the corporate parent of CLI, and Doug Cotton, former Market Sales & Operations Manager for CLI in the Nashville, Tennessee market. (Doc. Nos. 21, 21-1, 21-2.)

As set forth herein, the court finds that the plaintiff has failed to make a threshold showing that there is a "strong likelihood" that there are other employees of CLI who suffered an FLSA

---

[1] The plaintiff also filed the Declaration of putative opt-in plaintiff Daria Morgendorffer. (Doc. No. 20, at 4.) Because the court has already determined that it lacks personal jurisdiction over defendant CLI for purposes of claims brought by Morgendorffer, the court declines to consider her Declaration in ruling on the Motion for Notice.

violation and are similarly situated to the plaintiff. *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023). The motion, therefore, will be denied.

## I. FACTS AND PROCEDURAL BACKGROUND

Williams initiated this lawsuit in August 2023 by filing a Complaint, individually and on behalf of others similarly situated, asserting a claim under the Fair Labor Standards Act ("FLSA") for unpaid overtime wages and seeking damages in the form of unpaid compensation, liquidated damages, and attorney fees. (Doc. No. 1.) In support of his claim, Williams alleges, as relevant here, that defendant CLI owns and operates Jiffy Lube oil change shops in Tennessee and is an "employer" subject to the FLSA. (*Id.* ¶¶ 6–11.) In addition, Williams alleges that he was "employed by Defendant to perform work in this district" (thus implying that Williams worked at a Jiffy Lube store somewhere within the geographic region covered by the Middle District of Tennessee) and that he has been a "full-time, hourly-paid employee of Defendant at all times material to this lawsuit."[2] (*Id.* ¶¶ 1, 3.) He claims that CLI has a "common plan, policy and practice of requiring . . . Plaintiff and potential plaintiffs to this action to continue working after clocking-out of Defendant's time keeping system at the end of their shifts" and "to continue working during unpaid meal periods, without being compensated for such 'off the clock' work at the applicable FLSA overtime compensation rate of pay within weekly pay periods during all times relevant herein." (*Id.* ¶¶ 15, 16.)

Along with his Motion for Notice, Williams submitted a Declaration in which he further attests that he worked for CLI in a variety of locations in Nashville from 2008 to April 2023; was paid an hourly wage throughout that time; routinely worked more than 40 hours per week; and was

---

[2] Williams does not actually allege that he resides in Tennessee, only that he works for the defendant in Tennessee.

"required and expected" to work "off-the-clock" after his scheduled shifts, "without being paid for the off-the-clock work." (Doc. No. 20, Williams Decl. ¶¶ 1–4.) He explains that, when he says he worked "off the clock," he means that he performed work while he was not "punched in to" CLI's timekeeping system. (*Id.* ¶ 5.) He alleges that he was regularly required to continue working on customers' vehicles and cleaning up the store at the end of his workday, without being clocked in, and he estimates that he spent approximately fifty to seventy minutes each week working without being logged into CLI's timekeeping system. (*Id.* ¶¶ 6–7.)

Aside from the allegations concerning himself, Williams alleges that he and other hourly employees were directed by CLI's store managers to work "off the clock" to complete their work and that he "observed and ha[s] been told by other hourly-paid employees that they were also required to work over forty . . . hours per week without being paid overtime for the hours that they worked over [forty] per week." (*Id.* ¶¶ 13.) Williams claims that CLI store managers were "aware" of the time he and his co-workers worked off the clock and that the managers told the hourly employees they had to work off the clock, because the store managers were only "budgeted" a certain number of hours per week. (*Id.* ¶¶ 8–9.)

In the Declaration filed with CLI's Response in opposition to the Motion for Notice, Michael D. Davis, in his capacity as Vice President and CFO of CLI's corporate parent, attests that CLI formerly owned and operated Jiffy Lube stores in multiple states, including Tennessee, but sold them to Premium Velocity Auto, LLC ("PVA"), an unaffiliated entity, in December 2022. (Doc. No. 21-1, Davis Decl. ¶¶ 4–5.) Prior to the sale, Williams worked as a Customer Service Advisor at store #1770 in Nashville, Tennessee from August 24, 2020 through December 14, 2022, except for a total of twelve shifts worked at store # 2260, also in Nashville. (*Id.* ¶ 7.) The payroll records attached to Davis' Declaration show that Williams received overtime pay for work in

excess of forty hours for nearly every workweek, from August 2021 through December 2022, for anywhere from 1 hour to 20.8 hours per workweek. (Doc. No. 21-1, at 10–24.)

Davis asserts that all hourly employees, including Customer Service Advisors like Williams, were classified as non-exempt, meaning they received overtime pay at one and one-half times their regular hourly rate for all hours in excess of forty worked in any one workweek. (Davis Decl. ¶ 12.) A Customer Service Advisor's primary functions were to greet customers and communicate vehicle service recommendations, explain ancillary services to customers, and "accurately ring out customers and provide them with printed invoices using the store's point of sale ('POS') system. (*Id.* ¶ 9.) Each Jiffy Lube store also employed an exempt General Manager, non-exempt General Manager(s) or Service Manager(s), and Lubrication Technicians. (*Id.* ¶ 10.) The General Manager and Assistant Managers supervised employees at a single store.

During the last hour of every day, Customer Service Advisors were responsible for cleaning the office and lobby areas, but they were instructed to perform these cleaning duties while the store was still open, in between providing services to customers, so that they could generally clock out and leave at or about the store's closing time. (*Id.* ¶ 11.)

All Customer Service Advisors and Lubrication Technicians were required to clock in and clock out of work using the store's electronic timekeeping system, which was connected to the store's POS system. Each employee had to use his or her unique employee identification number ("ID") and confidential password to access the timekeeping system and the POS system, and employees could not access the POS system without being logged in. (*Id.* ¶ 13; *see also* CLI Employee Passcode policy, Doc. No. 21-1, at 31.) Customer Service Advisors were required to use the POS system to enter requested repairs and then, at the conclusion of any repairs, to go over the products and services, print the invoice, and process payment. (Davis Decl. ¶ 14.)

Davis expressly denies that CLI had a policy, written or unwritten, of requiring off-the-clock work by any non-exempt hourly employees, and he states that off-the-clock work was expressly prohibited. (*Id.* ¶ 16.) In addition, CLI maintained an "employee hotline" for employees to report employment issues, and an employee hotline poster with reporting procedures, including an email address and telephone number, was posted at each of CLI's stores. (*See id.*; *see also* Doc. No. 21-1, at 33.) According to Davis, no employee has ever submitted a hotline complaint or any other form of internal complaint or grievance contending that they have not been paid for all hours worked or had been denied overtime pay as a result of working off the clock. (Davis Decl. ¶ 16.)

The defendant also filed the Declaration of Doug Cotton. (Doc. No. 21-2.) Cotton was the Market Sales & Operations Manager overseeing the Nashville market from 2006 until December 14, 2022, when all of CLI's stores were sold. (*Id.* ¶ 1.) More specifically, Cotton oversaw the sales and operations of the Jiffy Lube stores in Nashville, including the two stores at which Williams worked during his final three years of employment with CLI. (*Id.* ¶ 3.) As part of his job duties, Cotton frequently visited the stores at which Williams worked, regularly spoke with the Managers and Assistant Managers at those stores, and trained them on wage and hour rules, including the rule that all hourly employees must be paid for all time they work in each shift. (*Id.* ¶ 4.) Cotton attests that, during his visits to the stores he oversaw, he also spoke with many hourly employees, including Williams, and he provided his contact information to hourly employees so they could call him to report any complaint or issue they had with their employment. (*Id.* ¶ 5.) He handled numerous employment-related issues while employed as Operations Manager, but no one ever complained to him that they were being required to work off the clock at the end of their shift, which in any event was expressly prohibited. (*Id.*)

In his Memorandum in support of his Motion for Notice, Williams characterizes his Declaration as "detail[ing] what it is like to be one of Defendant's hourly paid employees" and demonstrating that CLI had a *de facto*, "company-wide" policy of requiring all hourly paid employees to work off the clock at the end of their shifts and of depriving employees of all overtime pay owed. (Doc. No. 19-1, at 4.) He argues that he has "presented more than sufficient evidence showing a strong likelihood that Defendant's hourly paid employees are sufficiently similarly situated" and that court-supervised notice of a collective action to other similarly situated employees is warranted. (*Id.* at 8.) He also requests that his proposed notice forms and proposed means of distributing the notice be approved and that the statute of limitations for opt-in plaintiffs' claims be tolled as of the date his motion is fully briefed. (*Id.* at 10–12.)

In its Response to the Motion for Notice, CLI argues that the court lacks subject matter jurisdiction over the claims of any putative opt-ins outside Tennessee; that Williams' conclusory assertions in his Declaration that he has observed other employees being required to work off-the-clock are insufficient under *Clark* to establish a "strong likelihood" that he is similarly situated to other former hourly employees of CLI—and would have been insufficient under the standard in effect prior to *Clark*; that the court should not equitably toll the limitations period; and that the plaintiff's proposed notice forms are confusing and inaccurate. (Doc. No. 21.)

## II.    LEGAL STANDARD

The FLSA requires employers to "pay overtime to most employees who work more than 40 hours a week." *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019) (citing 29 U.S.C. § 207(a)(1)). The statute permits employees alleging a violation of this provision to bring suit on their own behalf and that of "other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such

action is brought." *Id.* In other words, this provision establishes two requirements for a collective action under the FLSA: (1) the additional plaintiffs must "actually be 'similarly situated'"; and (2) they must "signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The statute does not define "similarly situated" or prescribe the process for adding other plaintiffs to a collective action.

In *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989), the Supreme Court held that "district courts have discretion, in appropriate cases, to implement" Section 216(b) "by facilitating notice to potential" members of a Section 216(b) collective action. *Id.* at 169–70. In the absence of additional guidance as to how such a procedure would work, most district courts following *Hoffman-LaRoche* "adopted a two-step approach first described in" *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 361 (D.N.J. 1987). *Clark*, 68 F.4th at 1008. Under *Lusardi*'s "fairly lenient" "first step—called 'conditional certification'—a district court [could] facilitate notice of an FLSA suit to other employees" based on a "'modest factual showing' that they [were] 'similarly situated' to the original plaintiffs." *Id.* (citation omitted). At the second step, conducted after discovery, the district court would decide whether the "other employees" were actually "similarly situated to the original plaintiffs." *Id.* If so, the court would grant "final certification" for the case to proceed to decision as a collective action. *Id.* (citation omitted). The Sixth Circuit had acknowledged this procedure but, until last year, had never formally either approved or disapproved it.

In *Clark*, the Sixth Circuit firmly rejected both *Lusardi*'s "conditional certification" procedure as well as its "modest showing" standard, while continuing to recognize the need for a two-stage process—a first stage at which the court determines whether to authorize notice to potential plaintiffs, and a second stage at which the court determines whether the notified employees who have given notice of their desire to opt in as plaintiffs are actually similarly situated

to the named plaintiff and each other. *See id.* 1010–11. Only those employees who, after discovery, are determined to actually be similarly situated will then become plaintiffs in the underlying action. *Id.*

Regarding the factual showing required at the first stage of this process, the court, borrowing from the preliminary injunction standard, held that, "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id.* at 1011. The court explained that this level of proof

> requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance. The strong-likelihood standard is familiar to the district courts; it would confine the issuance of court-approved notice, to the extent practicable, to employees who are in fact similarly situated; and it would strike the same balance that courts have long struck in analogous circumstances.

*Id.* The court also stated that, in applying this standard, "district courts should expedite their decision to the extent practicable," particularly in light of the generally applicable two-year statute of limitations contained in the FLSA *Id.* The court noted that, to facilitate resolution of a motion for court-facilitated notice, a district court "may promptly initiate discovery relevant to the motion, including if necessary by 'court order.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

The *Clark* majority opinion did not "address the underlying threshold for FLSA similarity, which remains the same." *Id.* at 1020. Historically, courts in the Sixth Circuit have looked to three "non-exhaustive" factors to determine whether members of the collective action are similarly situated:

> (1) the "factual and employment settings of the individual[] plaintiffs"; (2) "the different defenses to which the plaintiffs may be subject on an individual basis"; and (3) "the degree of fairness and procedural impact of certifying the action as a collective action."

*Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009); *see also Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019). Plaintiffs are similarly situated if they can demonstrate that they suffered from "a single, FLSA-violating policy" instituted by the employer defendant, or if their FLSA claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Monroe*, 860 F.3d at 398 (quoting *O'Brien*, 575 F.3d at 584–85). "'Where Defendants have demonstrated a formal policy to comply with the law and compensate employees for all time worked, Plaintiffs may satisfy their burden by producing substantial evidence of a *de facto* policy of circumventing the law.'" *Fenley v. Wood Group Mustang, Inc.*, 325 F.R.D. 232, 242 (S.D. Ohio 2018) (quoting *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-27, 2015 WL 6662919, at *3 (S.D. Ohio Nov. 2, 2015); *see also Kutzback v. LMS Intellibound, LLC*, 301 F.Supp.3d 807, 817 (W.D. Tenn. 2018).

## III.    DISCUSSION

As an initial matter, the court notes that it has already granted CLI's Motion to Dismiss the claim of putative opt-in plaintiff Daria Morgendorffer for lack of personal jurisdiction over CLI for purposes of that claim. The court will not reiterate its findings here, but that decision has the effect of narrowing the geographic scope of any putative collective in this action to individuals who were employed by CLI in Tennessee, because the court would lack personal jurisdiction over any out-of-state plaintiffs who worked for CLI only outside of Tennessee, for purposes of FLSA claims against CLI. That ruling also renders Morgendorffer's Declaration irrelevant to the court's assessment of the plaintiff's Motion for Notice.

The question before the court, then, is whether Williams has presented sufficient evidence to demonstrate a strong likelihood that other former CLI employees within Tennessee are similarly situated to him. Williams' Declaration is the only evidence he has provided. The plaintiff argues

that this evidence is more than sufficient, because *Clark*'s "strong likelihood" requires only a "showing of 'more than the mere possibility of success.'" (Doc. No. 19-1, at 6 (quoting *R.K. by and through J.K. v. Lee*, No. 3:21-cv-00853, 2022 WL 19076756, at *3 (M.D. Tenn. Jan.18, 2022) (Crenshaw, C.J.); *A. Philip Randolph Inst. v. Husted*, 907 F.3d 913, 919 (6th Cir. 2018)).) As another district court has explained, however, addressing an identical argument in a case brought by the same attorneys who represent the plaintiff here,

> This equivalence demonstrates a confusion created by the new *Clark* test, namely that the "strong likelihood" test is not a fixed point but instead a flexible target in the preliminary injunction context, but seemingly not in the FLSA context. When a party is seeking a preliminary injunction, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay [or preliminary injunction]." [*A. Philip Randolph Inst.*, 907 F.3d at 919]. . . . *Clark* does not say whether this relationship survives in the new FLSA notice context, nor how to gauge the potential irreparable injury from the Court declining to facilitate notice. . . . Further, . . . the *Clark* court explicitly stated that irreparable injury was "inapposite" to the questions posed in FLSA cases. *Clark*, 68 F.4th at 1011. The only guidance provided by *Clark* is that the new standard "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.* . . . Given the Sixth Circuit's instruction that injury is irrelevant to the present question, the Court does not believe that the "mere possibility" language is an applicable standard here.

*Rashad v. Mason's Pro. Cleaning Serv., LLC*, No. 2:22-cv-02635-JTF-tmp, 2023 WL 5154534, at *2 (W.D. Tenn. Aug. 10, 2023).

This court agrees with the assessment in *Rashad* and finds that the operative standard, under *Clark*, requires the plaintiff to make "a showing greater than the one necessary to create a genuine issue of fact." *Clark*, 68 F.4th at 1011. Again, the only evidence presented by the plaintiff is his Declaration, and his Declaration, insofar as it pertains to the plaintiff's knowledge of other employees' experience, asserts only that store managers told Williams and "other hourly employees" that they had to work "off the clock" to complete their work, that he "observed other employees working beyond their scheduled shift with no extra pay," and he "observed and ha[s]

been told by other hourly-paid employees that they were also required to work over forty (40) hours per week without being paid overtime." (Williams Decl. ¶¶ 9, 10, 13.)

Notably, the plaintiff states that he worked for CLI at various stores beginning in 2008 (*id.* ¶ 1), but he does not identify when he observed other employees working overtime without being compensated or at what locations he purportedly witnessed this practice. Focusing on the period of time covered by the applicable statute of limitations, the plaintiff's experience is limited to, at most, two stores. He does not purport to have knowledge of employees who worked at other Jiffy Lube locations, and he does not even state whether the employees he purportedly observed worked at one or both of the stores at which he was posted—or even that the conduct he witnessed, as it affected other employees, occurred within the limitations period. With respect to the two stores at which he did perform work during the limitations period, Williams provides no detail regarding the positions he and his co-workers held, how the timekeeping system at CLI worked, who the supervisors were who required overtime, or how he knew the other employees were not being fully compensated. Williams has not provided any information from which the court can assess the "factual and employment settings of the individual[] plaintiffs," "the different defenses to which the plaintiffs may be subject on an individual basis," or "the degree of fairness and procedural impact of certifying the action as a collective action." *Monroe*, 860 F.3d at 397. Although largely contradicted by Davis' and Cotton's Declarations, the plaintiff's Declaration is arguably sufficient to establish a material factual dispute as to whether CLI violated the FLSA with respect to Williams *personally*, but his brief and utterly conclusory allegations regarding his knowledge of other purportedly similarly situated employees fall far short of *Clark*'s requirement that he make "a showing greater than the one necessary to create a genuine issue of fact" before a district court will "facilitate notice of an FLSA suit to other employees." *Clark*, 68 F.4th at 1011.

In addition, the fact that *no* putative opt-in plaintiff in Tennessee (aside from Williams) has filed a notice of consent to join this lawsuit and that Williams has presented only his own Declaration, despite the fact that this case has been pending for more than a year, tends to dispel the suggestion that there are other similarly situated employees who desire to join in this collective action. Williams purports to have personal knowledge of other employees who worked overtime without being fully compensated, but he does not identify them or indicate when they worked for CLI, and he does not claim to know of any other similarly situated employees who actually desire to "opt in" as plaintiffs in this lawsuit. While not dispositive on its own, the absence of other opt-in plaintiffs, coupled with the named plaintiff's failure even to profess to know of other individuals who would join in this action if given the opportunity, further contributes to the court's conclusion that the plaintiff has failed to establish that there are similarly situated employees who have suffered an FLSA violation and would join this lawsuit if given notice of it.

Because the court finds that the plaintiff is not entitled to court-approved notice to other putative opt-in plaintiffs under *Clark*, the court has no need to consider the issue of equitable tolling or the suitability of the plaintiff's proposed notice forms or methods of providing notice.

## IV. CONCLUSION

For the reasons set forth herein, the plaintiff's Motion to Facilitate Notice of an FLSA Collective Action under 29 U.S.C. § 216(b) (Doc. No. 19) will be denied. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge